Filed 2/25/25  P. v. Young CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B334422 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA001203) |
| v. | |
| TORAINO YOUNG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed and remanded with directions.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.

The trial court denied defendant Toraino Young's (defendant's) petition for resentencing under Penal Code section 1172.6 (former section 1170.95) at the prima facie stage based on its conclusion that the record of conviction demonstrates as a matter of law that defendant was the murder victim's actual killer.[1]  We are asked to decide whether there is a sufficient basis for the trial court's actual-killer-as-a-matter-of-law finding.

## I.  BACKGROUND
### A.     *Defendant's Criminal Conduct and Trial*

As we discuss *post*, the trial court relied on this court's partially published opinion resolving defendant's direct appeal from his judgment of conviction (*People v. Young* (1992) 11 Cal.App.4th 1299 (*Young I*)) to make its ruling on defendant's section 1172.6 petition.  For that reason, the summary of defendant's offense conduct that follows is taken from *Young I.*

One night in July 1989, Steven Soyars (Soyars) drove his friend, Estella Cabrera (Cabrera), to her home in Los Angeles.  When Cabrera went inside, another car pulled into the driveway behind Soyars.  The occupants of that car—defendant and another man—then approached Soyars wearing masks and carrying guns.

Defendant pointed a gun at Soyars and told him to move to the back seat of his car.  Soyars complied, defendant got into Soyars's car, and defendant's companion backed the other car out of the driveway.  Cabrera witnessed what was going on and yelled from the house that she was calling the police.  Defendant

---

[1]     Undesignated statutory references that follow are to the Penal Code.

2

drove away in Soyars's car, with Soyars still inside, and after driving for about 500 feet, defendant told Soyars to get out of the car. Defendant demanded money, and Soyars gave him his wallet.

A Los Angeles Police Department officer was on patrol nearby. The officer drove past defendant, who was still driving Soyars's car, and made a U-turn to follow him. Defendant then accelerated, and the officer pursued him. During the ensuing chase, defendant drove in excess of 50 miles per hour on residential streets, veered onto the wrong side of the road, and ran multiple red lights. Ultimately, at one intersection where he ran a red light, defendant collided with a minivan and a Volvo. The Volvo catapulted into the air and landed on its roof; its driver, Martin Brumer (Brumer), died at the scene. Defendant fled on foot, but pursuing officers apprehended him.

At his later criminal trial on a charge of murder and other offenses, defendant testified in his own defense and, in the words of *Young I*, told "an incredible story [in] which [he] admitted having the collision" but claimed someone gave him permission to drive Soyars's car. The trial court instructed defendant's jury on felony murder using a modified version of CALJIC No. 8.21.[2] The

---

[2]     The instruction provided: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs [during the commission or attempted commission of the crime] of robbery or kidnap for robbery is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit robbery or kidnap for robbery and the commission or attempted commission of such crime must be proved beyond a reasonable doubt."

3

court also instructed the jury on unjoined perpetrators using CALJIC No. 2.11.5.[3]

The jury found defendant guilty of first degree murder and found true a robbery-murder special circumstance (§§ 187, subd. (a), 189, 190.2, subd. (a)(17)(A)). The jury also convicted defendant of second degree robbery (§ 211) and evading a police officer causing death (Veh. Code, § 2800.3). The trial court sentenced defendant to life in prison without the possibility of parole plus determinate terms for the offenses other than the murder charge. This court affirmed the judgment of conviction in *Young I.*

### B. *Defendant's Petition for Resentencing*

Defendant filed his section 1172.6 form petition for resentencing in November 2022. Defendant asked the trial court to appoint counsel to represent him, which the court did.

The People opposed defendant's petition and submitted with their opposition a copy of the *Young I* opinion, the jury instructions given in defendant's trial, and the jury verdict forms. The People acknowledged the jury was instructed on felony murder but argued defendant was "prosecuted and convicted as

---

[3] The instruction provided: "There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial. [¶] There may be many reasons why such person is not here on trial. Therefore, do not discuss or give any consideration as to why the other person is not being prosecuted in this trial or whether [he] has been or will be prosecuted. Your [sole] duty is to decide whether the People have proved the guilt of the defendant on trial."

4

the actual killer" because no instruction on aiding and abetting was given to the jury. Defendant filed a reply in which he chiefly argued the trial court may not engage in fact-finding at the prima facie stage of section 1172.6 consideration.

The trial court held a hearing and denied the petition at the prima facie stage, without issuing an order to show cause. In doing so, the court acknowledged it was relying on the factual summary included in *Young I*, which "show[ed] that the prosecut[ion] portrayed [defendant] . . . as the actual killer" and he "was not accused of acting with anyone else when he killed the victim." In addition (and in the alternative), the trial court believed the jury instructions also established as a matter of law that defendant was the victim's actual killer. The court cited both "[t]he absence of jury instructions on imputed malice or accomplice liability" and the fact that the evading an officer count "required a finding that [defendant] 'proximately caused the death of another person[.]' . . ."

## II. DISCUSSION

Although the factual summary in *Young I* indicates defendant was Brumer's actual killer, section 1172.6 prohibits the court from relying on a prior appellate opinion to make such a determination. The section 1172.6 court therefore erred by relying on *Young I* to find as a matter of law that defendant was the victim's actual killer. The court's alternative reliance on the jury instructions given at defendant's trial is also defective because neither a "proximate cause" of death finding nor certain features of the instructions defendant's jury was given establish as a matter of law that defendant was the actual killer. That

5

determination must come, if it comes, only after issuance of an order to show cause.

### A. *Reliance on the Facts Recited in* Young I *Was Error*

At the prima facie stage of section 1172.6 review, a trial court must determine whether the petitioner would be entitled to relief if the petition's allegations were proven. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) In making its determination at the prima facie stage, the court should not make credibility determinations or engage in "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at 974.) We review de novo a trial court's determination that a petitioner failed to make a section 1172.6 prima facie showing. (*People v. Ramos* (2024) 103 Cal.App.5th 460, 463.)

The Attorney General maintains the trial court was entitled to rely on the facts recited in *Young I* to determine defendant was the actual killer. That is wrong, and the only law cited in support of that argument is a Court of Appeal case, *People v. Guilford* (2014) 228 Cal.App.4th 651, that predates pertinent amendments to the text of section 1172.6 (Stats. 2021, ch. 551, § 2 [Sen. Bill No. 775]).

As amended (and in effect at the time of the prima facie hearing in this case), section 1172.6, subdivision (d) states a trial court "may . . . consider the procedural history of the case recited in any prior appellate opinion" at an evidentiary hearing on a petition for resentencing. As precedent holds, this provision prohibited the section 1172.6 court from relying on *Young I*'s

6

factual summary to find defendant was Brumer's actual killer.[4] (*People v. Clements* (2022) 75 Cal.App.5th 276, 292 [by allowing consideration of "'the procedural history'" in prior appellate opinions, the Legislature impliedly prohibited consideration of "factual summaries" in prior appellate opinions]; *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["If [the factual summary in an appellate opinion] may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage"].)

### B.    The Court's Alternative Rationales Are Also Flawed

The trial court alternatively concluded the jury must have found defendant was the victim's actual killer because it convicted him of evading a police officer proximately causing death.  This too is erroneous.  The jury instruction on the evading an officer charge required only a finding that defendant "operat[ed] a motor vehicle with intent to evade . . . a pursuing peace officer[ ]," not a finding that defendant collided with the

---

[4]    The Attorney General suggests the trial court was not engaged in fact-finding when it "[c]onsult[ed]" the opinion in *Young I* and "learned" about defendant's role in Brumer's death. The Attorney General contrasts these activities with the sort of "factfinding involving the weighing of evidence or the exercise of discretion" that our Supreme Court held is impermissible at the prima facie stage in *Lewis*.  (*Lewis, supra*, 11 Cal.5th at 972.) *Lewis* was decided before the Legislature amended the statute to prohibit reliance on factual summaries in prior appellate opinions.

victim.  To be sure, it did require the jury to find defendant "proximately caused the death of another person," but a person may be the proximate cause of another's death without being the actual killer of the deceased.  (See, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 1, 17-18 ["'Proximately causing and personally inflicting harm are two different things.  The Legislature is aware of the difference'"]; see also *id.* at 4 ["the term 'actual killer' as used in the revised felony-murder rule of section 189, subdivision (e)(1) refers to someone who personally killed the victim and is not necessarily the same as a person who 'caused' the victim's death"].)

The trial court also determined the jury must have found defendant personally killed Brumer because there was no instruction at trial on general principles of aiding and abetting, aiding and abetting a felony murder, or the natural and probable consequences doctrine.  That is irrelevant, however, because these instructions were not necessary to permit the jury to find defendant guilty of felony murder even if he was not the actual killer.  The felony murder instruction informed the jury that defendant was guilty of first degree murder if it found there was an unlawful killing that occurred during the commission of robbery and defendant specifically intended to commit robbery.  In other words, the instruction did not require the jury to find defendant personally committed the unlawful killing (it is possible, for instance, the jury believed Brumer's actual killer was the unjoined perpetrator referenced in the other instruction it received).

Finally, the Attorney General argues that because "the special circumstances instruction . . . did not contain any language regarding an aider and abettor or co-conspirator and

the intent to kill" and "[s]uch language would have been present in that instruction if [defendant] had been prosecuted as an aider and abettor to the underlying crime during which the murder occurred." Defendant's jury would not have been privy to the Attorney General's view of customary instructional practice, however. To the contrary, the special circumstance instructions defendant's jury received authorized the jury to find the circumstance true if "[t]he murder was committed" while defendant was engaged in the commission of (or immediate flight from) a robbery or kidnap for robbery and required no finding that defendant committed the murder. Just as with the absence of aiding and abetting instructions, the jury had all it theoretically needed in the instructions it received to find defendant guilty of felony murder even if he was not the actual killer.

Because the jury could have convicted defendant of felony murder and there is nothing in the prima facie record that demonstrates as a matter of law that defendant was the victim's actual killer (or that the jury necessarily so found), reversal and remand for issuance of an order to show cause is required.

DISPOSITION

The order denying defendant's section 1172.6 petition is reversed and the cause is remanded with directions to issue an order to show cause and to thereafter proceed as required by section 1172.6, subdivision (d).


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

I concur:


MOOR, J.

The People v. Toraino Young
B334422


HOFFSTADT, P.J., dissenting.

I agree with the majority that a defendant is not entitled to an evidentiary hearing under Penal Code section 1172.6—and that defendant's petition for relief may be summarily denied—if "the record of conviction unequivocally establishes that [the] defendant was the 'actual killer.'" (*People v. Garcia* (2022) 82 Cal.App.5th 956, 969 (*Garcia*); see also *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [actual killer not entitled to relief under section 1172.6].) I also agree that, for these purposes, the record of conviction includes the jury instructions given at trial as well as the jury's verdict, and will assume that it does not include the recitation of facts regarding the offense set forth in a prior appellate decision. (*People v. Gallardo* (2024) 105 Cal.App.5th 296, 301; *People v. Harden* (2022) 81 Cal.App.5th 45, 50 (*Harden*); cf. *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238 [applying limitation on looking to facts in appellate decisions to prima facie stage].) Where I disagree with the majority is that I conclude that this standard for summary denial has been met here because "it would have been impossible . . . for a jury to have made the findings it did" on the instructions given "without finding that [Toraino Young (defendant)] was [the] actual killer." (*Beaudreaux*, at p. 1248.)

Defendant was the sole named criminal defendant charged at his trial. The jury was not instructed that it could convict defendant of murder based on his aiding and abetting someone

else in committing the killing or in committing some lesser crime that naturally and probably resulted in death. The jury was not instructed that it could convict defendant of murder based on someone else committing a lesser felony the natural and probable consequence of which was death. Instead, the jury was instructed that it could convict defendant of murder if he "unlawfully kill[ed]" someone else either (1) "with malice aforethought" or (2) "during the commission or attempted commission of robbery or kidnap[ping] for robbery." This second option embodies a felony-murder theory because it holds a defendant liable for murder based on a killing he committed during the commission of a robbery (rather than a killing he committed with malice aforethought). But a person who is convicted of a murder on such a felony-murder theory is also the actual killer if he "personally committed the act(s) that directly resulted in the victim's death." (*Garcia, supra,* 82 Cal.App.5th at p. 971.)

Here, it is impossible for the jury not to have concluded on the instructions given that defendant personally committed the acts that resulted in the victim's death. In *Harden, supra,* 81 Cal.App.5th 45, the court held that a defendant prosecuted under a felony-murder theory was the actual killer—and her petition for relief under section 1172.6 was properly denied without an evidentiary hearing—when the jury was instructed that she could be convicted of murder only if she "unlawfully kill[ed] a human being" (as opposed to having "committed an act that caused the death of another person") and could receive a sentencing enhancement only if she "personally inflicted great bodily injury." (*Id.* at pp. 54, 58, emphasis omitted.) The instructional requirement that defendant "kill" paired with the requirement of

2

personal infliction of the injury causing the death meant that the defendant in *Harden* was the actual killer as a matter of law. The same analysis applies here. As in *Harden*, the jury was instructed that it could convict defendant of murder only if he "unlawfully kill[ed]" another person. Further, the special circumstance required proof that "[t]he murder was committed while the defendant was engaged in the commission of or in the immediate flight after committing a robbery" or "kidnap for robbery," and the crime of evading police causing death required proof that defendant "willfully drove a motor vehicle in a manner to flee or elude a pursuing police officer" and "proximately caused the death of another person." Given these instructions, read as a whole, the jury could have returned the verdicts and findings it did only if it found that defendant personally committed the act that directly resulted in the victim's death—that is, only if he was the actual killer.

The majority comes to a different conclusion for what I perceive as two different reasons.

First, the majority reasons that the jury's finding that defendant "proximately caused" another's death (which, as noted above, is an element of the evading police crime) does not necessarily establish that defendant was the actual killer because, as noted in *People v. Lopez* (2022) 78 Cal.App.5th 1, 17-18, a person can be the proximate cause of another's death without being the actual killer. But, as *Harden* noted, the murder instructions in *Lopez* did not require a finding that the defendant "unlawfully kill[ed]" the victim and did not require a finding of personal infliction of injury. (*Harden, supra*, 81 Cal.App.5th at p. 58.) The same distinction from *Lopez* exists here: The murder instructions in this case required a finding of

3

"unlawful[] kill[ing]," which combined with the special circumstance and evading police instructions, required a finding that defendant was the person driving the motor vehicle that caused the death, thereby personally inflicting the injury resulting in death.

Second, the majority reasons that the jury instructions "did not require the jury to find defendant personally committed the unlawful killing—and it is possible the jury believed [the victim's] actual killer was [an] unjoined perpetrator referenced in" the CALJIC No. 2.11.5 instruction it received, thereby giving the jury "all it theoretically needed . . . to find defendant guilty of felony murder even if he was not the actual killer." To be sure, the jury in this case was instructed with CALJIC No. 2.11.5, which provides that "[t]here has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial" and that the jury should focus on "decid[ing] whether the People have proved the guilt of the defendant on trial." But that instruction, as *Harden* noted, serves to "discourage improper conjecture"; it does "not provide the jury with a path to convict [a defendant] of felony murder on a theory other than [the defendant] being the actual killer." (*Harden*, *supra*, 81 Cal.App.5th at p. 59; *People v. Lemcke* (2001) 11 Cal.5th 644, 655 [a single instruction may not be judged in isolation, but must be "considered in the context of the instructions as a whole and the trial record"].) Nor do any of the instructions in this case create a path for holding *defendant* criminally liable for the acts of any "unjoined perpetrator": The sole function of the felony-murder instruction in this case was to give the jury a way to find defendant guilty of murder—without

4

also finding malice aforethought—for an "unlawful kill[ing]" defendant himself committed.

Because defendant was neither instructed nor convicted on a now-impermissible theory of murder, I would affirm the trial court's summary denial of his section 1172.6 petition.


HOFFSTADT, P.J.